**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICHOLAS PARKER, individually and on behalf of all others similarly situated,<br><br>                                       Plaintiff,<br><br>        v.<br><br>THE PROCTER & GAMBLE COMPANY and PROCTER & GAMBLE PRODUCTIONS, INC.,<br><br>                                       Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nicholas Parker ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendants The Procter & Gamble Company and Procter & Gamble Productions, Inc. ("Defendants").

## NATURE OF THE ACTION

1.      This action seeks redress on a class-wide basis for a deceptive and otherwise improper business practice that Defendants engage in with respect to the packaging of their "Gillette® Odor Shield Invisible Solid," "Old Spice® High Endurance Invisible Solid," "Old Spice® Champion," and "Old Spice® Classic" antiperspirants and deodorants (the "Products"). Each of the Products have non-functional slack-fill packaging in violation of the Federal Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 362(a) and 362(d), New York Educ. Law §§ 6815 and 6818, and New York General Business Law ("GBL") §§ 349 and 350.  In each case, size of the container in comparison to the actual deodorant stick misleads reasonable consumers

1

into believing that they are buying more than what is actually being sold.

2.      As detailed herein, each of the containers has **nearly 3 inches of slack-fill** in height and is designed to give the false impression that there is more product than actually packaged.

3.      Defendants deceived Plaintiff and other consumers nationwide by mischaracterizing the size of their Products.  Defendants were unjustly enriched as a result of their conduct.  Through these unfair and deceptive practices, Defendants have collected millions of dollars from the sale of their Products that they would not have otherwise earned.

## THE PARTIES

4.      Plaintiff Nicholas Parker is a citizen of the state of New York and resides in New York County.  Mr. Parker purchased 3.25 ounce sticks of Old Spice Classic Antiperspirant and Deodorant at a Duane Reade retail location in New York County throughout 2013 and 2014 for approximately $3.  Mr. Parker did not know, and had no reason to know, that the Product contained non-functional slack-fill.  Mr. Parker paid a tangible increased cost for the Product, which was worth less than represented because the Product did not contain as much deodorant as the packaging would indicate.  Defendants' Product packaging was a material factor in Mr. Parker decision to purchase the Product.  Based on Defendants' Product packaging, Mr. Parker believed that he was getting more of the Products than was actually being sold.  Had Mr. Parker known Defendants' packaging utilized non-functional slack-fill, he would not have purchased the Product.

5.      Defendant Procter & Gamble Company is incorporated in the State of Ohio, with a principal place of business at 1 Procter and Gamble Plaza, Cincinnati, Ohio 45202.  Defendant Procter & Gamble Company wholly owns Defendant Procter & Gamble Productions, Inc. and owns the trademarks for "Gillette® Endurance," "Old Spice® High Endurance Invisible Solid,"

2

"Old Spice® Champion," and "Old Spice® Classic" that appear on the Products.

6.     Defendant Procter & Gamble Productions, Inc. is incorporated in the State of Ohio, with a principal place of business at 1 Procter and Gamble Plaza, Cincinnati, Ohio 45202. Upon information and belief, Defendant Procter & Gamble Productions, Inc. manufactures and distributes the Products.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

8.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within New York, such that Defendants have significant, continuous, and pervasive contacts with the State of New York.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District, and a substantial part of the events giving rise to Plaintiff's claims took place within this judicial district, including his purchase of Old Spice Deodorant.

## FACTUAL BACKGROUND

10.     Defendants manufacture, market, sell and distribute, inter alia, various consumer products under well-known household brand names such as Gillette® and Old Spice®.

11.     The Gillette® Odor Shield Invisible Solid is an antiperspirant and deodorant available in the Cool Wave fragrance; Old Spice® High Endurance Invisible Solid is a line of antiperspirants and deodorants available in Playmaker, Fresh, Original, Sport, Game Day, and Smooth Blast fragrances; Old Spice® Champion is an antiperspirant and deodorant; Old Spice®

3

Fresh Classic is a deodorant stick in Original and Fresh fragrances.  The Products come in 2.6 ounce (the "2.6 ounce products"), 3.0 ounce (the "3.0 ounce products"), and 3.25 ounce (the "3.25 ounce products")

12.     Defendants sell the Products at most supermarket chains, convenience stores and major retail outlets throughout the United States, including but not limited to Costco, Target, Wal-Mart, Walgreens, CVS, Duane Reade, and Rite Aid.

13.     Defendants routinely and purposefully employ slack-filled packaging containing non-functional slack-fill to mislead consumers into believing that they were receiving more than they actually are.

14.     Defendants lack any lawful justification for doing so.

15.     The container size and dimensions for all of the 2.6 ounce Gillette® Odor Shield Invisible Solid Products are exactly the same.  The container size and dimensions for all of the 2.6 ounce Old Spice® Champion Products are exactly the same.  The container size and dimensions for all of the 3.0 ounce Old Spice® High Endurance Invisible Solid Products are exactly the same.  The container size and dimensions for all of the 3.25 ounce Old Spice® Classic Products are exactly the same.  The containers for the Products are 5.25" long and 2.5" wide, 5.625" long and 2.5" wide, and 5.75" and 2 .625" wide, respectively.

16.     Pictures of some of the Products demonstrating the slack-fill are shown below:





17. The actual Gillette® Odor Shield Invisible Solid deodorant stick inside the 2.6 ounce Product is only approximately 2.75" tall and 2.5" wide. The actual Old Spice® Champion Invisible Solid deodorant stick inside the 2.6 ounce Product is only approximately 2.75" tall and 2.5" wide. The actual Old Spice® High Endurance Invisible Solid deodorant stick inside the 3.0 ounce Product is only approximately 2.875" tall and 2.625" wide. The actual Old Spice® Classic deodorant stick inside the 3.25 ounce Product is only approximately 3.5" tall and 2.75" wide.

18. The volume capacity of the container for the 2.6 ounce sticks is approximately 10.431 cubic inches. The volume capacity of the container for the 3.0 ounce sticks is approximately 11.044 cubic inches. The volume capacity of the container for the 3.25 ounce sticks is approximately 11.854 cubic inches.

19. The volume of each 2.6 ounce stick is only approximately 5.399 cubic inches

6

leaving a difference of 5.032 cubic inches or approximately 48% of slack-fill.

20.     The volume of each 3.0 ounce stick is only approximately 5.927 cubic inches leaving a difference of 5.117 cubic inches or approximately 46% of slack-fill.

21.     The volume of each 3.25 ounce stick is only approximately 7.559 cubic inches leaving a difference of 4.295 cubic inches or approximately 36% of slack-fill.

22.     Non-functional slack-fill is the difference between the actual capacity of a container and the volume of product contained within.  Purchasers should have received enough deodorant stick for there to be no non-functional slack-fill or paid respectively 48%, 46% and 36% less for the 2.6 ounce, 3.0 ounce and 3.25 ounce Products.

23.     The propel/repel mechanism utilized in the containers that pushes up the deodorant stick does not require so much space to function.  For example, a fully functioning travel-size deodorant container using a similar standard propel/repel mechanism is only 3" tall in its entirety with the propelling mechanism taking up only .75 of an inch.

24.     Further, before the Products are even opened, the deodorant sticks are propelled mid-way to bring the deodorant to the top of the container, thereby leaving approximately half the container hollow and unfilled.

25.     Consumers never actually see the amount of deodorant product they are using until the Product is used up because the containers are not transparent.  Consumers therefore have no reason to know that the Products are misbranded.

26.     Plaintiff and the Class (defined below) have been damaged by Defendants' deceptive and unfair conduct in that they purchased Products with non-functional slack-fill packaging and paid higher prices than they otherwise would have paid had Defendants not misrepresented the Products' actual sizes.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class") and a subclass of Class members who purchased the Products in New York (the "New York Subclass").  Excluded from the Class and New York Subclass is any entity in which Defendants have a controlling interest, and officers or directors of Defendants, or persons who purchased the Products for purposes of resale.

28.     Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and New York Subclass number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

29.     Common questions of law and fact exist as to all members of the Class and New York Subclass and predominate over questions affecting only individual Class and New York Subclass members.  Common legal and factual questions include, but are not limited to, whether Defendants' slack-filled packaging of the Products was misleading.

30.     The claims of the named Plaintiff are typical of the claims of the Class and New York Subclass in that the named Plaintiff was exposed to Defendants' misleading slack-filled packaging, purchased the Product, and suffered a loss as a result of that purchase.

31.     Plaintiff is an adequate representative of the Class and New York Subclass because his interests do not conflict with the interests of the Class and New York Subclass members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class and New

York Subclass members will be fairly and adequately protected by Plaintiff and his counsel.

32.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and New York Subclass members.  Each individual member of the Class and New York Subclass may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### (Deceptive Acts Or Practices, New York GBL § 349)

33.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

34.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against both Defendants.

35.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by utilizing non-functional slack-fill for the Products' packaging.

36.     The foregoing deceptive acts and practices were directed at consumers.

37.     The foregoing deceptive acts and practices were misleading in a material way because they fundamentally misrepresented the characteristics, quantities, and benefits of the

9

Products to induce consumers to purchase same.

38.     Plaintiff and members of the New York Subclass were injured because they paid a price premium of 48%, 46% and 36% in the 2.6 ounce, 3.0 ounce, and 3.25 ounce containers, respectively for the Products based on Defendants' utilization of non-functional slack-fill packaging.  As a result, Plaintiff and members of the New York Subclass have been damaged in the difference in value between the Products as represented and the Products as actually sold.

39.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### (False Advertising, New York GBL § 350)

40.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

41.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against both Defendants.

42.     Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York GBL.

43.     Defendants' misleading, and deceptive statements and representations of fact, including the utilization of non-functional slack-fill, were and are directed to consumers.

44.     Defendants' misleading, and deceptive statements and representations of fact, including the utilization of non-functional slack-fill, were likely to mislead a reasonable consumer acting reasonably under the circumstances.

45.     Defendants' misleading, and deceptive statements and representations of fact,

10

including the utilization of non-functional slack-fill packaging, have resulted in consumer injury or harm to the public interest.

46.     Plaintiff and members of the New York Subclass were injured because they paid a price premium of 48%, 46% and 36% in the 2.6 ounce, 3.0 ounce, and 3.25 ounce containers, respectively for the Products based on Defendants' utilization of non-functional slack-fill.  As a result, Plaintiff and members of the New York Subclass have been damaged in the difference in value between the Products as represented and the Products as actually sold.

47.     Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendants' utilization of non-functional slack-fill because they paid more for the Products than they would have had they known the truth about the Products.

48.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### (Negligent Misrepresentation)

49.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

50.     Plaintiff brings this claim individually and on behalf of the members of the Class and New York Subclass against both Defendants.

51.     As discussed above, Defendants' packaging does not disclose that the Products contain 48%, 46% and 36% slack-fill in the 2.6 ounce, 3.0 ounce, and 3.25 ounce containers, respectively.  Defendants had a duty to disclose this information.

52.     At the time Defendants made these representations, Defendants knew or should

have known that these representations were false or made them without knowledge of their truth or veracity.

53.     At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about the Products.

54.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class and New York Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class and New York Subclass members to purchase the Products.

55.     Plaintiff and Class and New York Subclass members would not have purchased the Products if the true facts had been known.

56.     The negligent actions of Defendants caused damage to Plaintiff and Class and New York Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## <u>COUNT IV</u>
### (Common Law Fraud)

57.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

58.     Plaintiff brings this claim individually and on behalf of the members of the Class and New York Subclass against both Defendants.

59.     As discussed above, Defendants' packaging is misleading in that the packaging does not disclose that the Products contain 48%, 46% and 36% slack-fill in the 2.6 ounce, 3.0 ounce, and 3.25 ounce containers, respectively.  Defendants had a duty to disclose this information.

60.     The false and misleading representations and omissions were made with

knowledge of their falsehood.

61.     The false and misleading representations and omissions were made by
Defendants, upon which Plaintiff and members of the Class and New York Subclass reasonably
and justifiably relied, and were intended to induce and actually induced Plaintiff and Class and
New York Subclass members to purchase the Products.

62.     The fraudulent actions of Defendants caused damage to Plaintiff and members of
the Class and Subclass, who are entitled to damages and other legal and equitable relief as a
result.

## COUNT V
### (Unjust Enrichment/Common Law Restitution)

63.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set
forth herein.

64.     Plaintiff brings this claim individually and on behalf of the members of the Class
and New York Subclass against all Defendants.

65.     Plaintiff and members of the Class and New York Subclass conferred benefits on
Defendants by purchasing the Products.

66.     Defendants have knowledge of such benefits.

67.     Defendants have been unjustly enriched in retaining revenues derived from
Plaintiff's and Class and New York Subclass members' purchases of the Products.  Retention of
those monies under these circumstances is unjust and inequitable because Defendants' illegal
utilization of non-functional slack-fill packaging caused Plaintiff and Class and New York
Subclass to purchase the Products, which they would not have had the true facts been known.

68.     Because Defendants' retention of the non-gratuitous benefits conferred on them
by Plaintiff and members of the Class and New York Subclass is unjust and inequitable,

13

Defendants must pay restitution to Plaintiff and members of the Class and New York Subclass

for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

69.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly

situated, seeks a judgment against Defendants, as follows:

A.     For an order certifying the nationwide Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass;

B.     For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.     For an order finding in favor of Plaintiff and the nationwide Class and New York Subclass on all counts asserted herein;

D.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.     For an order enjoining Defendants from continuing the unlawful practices detailed herein; and

H.     For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  August 6, 2015                          Respectfully submitted,

                                                **BURSOR & FISHER, P.A.**


                                                By:      */s/ Joseph I. Marchese*
                                                         Joseph I. Marchese

                                                Scott A. Bursor
                                                Joseph I. Marchese
                                                Yitzchak Kopel
                                                Philip L. Fraietta
                                                888 Seventh Avenue
                                                New York, NY  10019
                                                Telephone: (212) 989-9113
                                                Facsimile:  (212) 989-9163
                                                Email:  scott@bursor.com
                                                        jmarchese@bursor.com
                                                        ykopel@bursor.com
                                                        pfraietta@bursor.com

                                                *Attorneys for Plaintiff*